IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

BILLY D. SIZEMORE, )
)
    Petitioner, )
)
v. ) No. 1:15-cv-01309-STA-egb
)
AVRIL CHAPMAN, )
)
    Respondent. )

ORDER DIRECTING CLERK TO MODIFY DOCKET,
DENYING § 2254 PETITION,
DENYING CERTIFICATE OF APPEALABILITY
AND
DENYING LEAVE TO APPEAL *IN FORMA PAUPERIS*

In December 2015, Petitioner, Billy D. Sizemore, a Tennessee state prisoner, filed a *pro se* habeas corpus petition (ECF No. 1) under 28 U.S.C. § 2254 (the "Petition"). For the reasons that follow, the Petition is **DISMISSED**.

BACKGROUND

**I.    State Proceedings**

The following background summary is drawn from the state court record (ECF No. 17), and the decisions in Sizemore's state appeals. *See State v. Sizemore*, 2011 WL 345854, at *1 (Tenn. Crim. App. Jan. 31, 2011), *perm. appeal denied* (Tenn. May 25, 2011); *Sizemore v. State*, 2014 WL 4109754, at *1 (Tenn. Crim. App. June 17, 2014), *perm. appeal denied* (Tenn. Dec. 18, 2014).

1

On July 28, 2008, a grand jury of Perry County, Tennessee, returned an indictment charging Sizemore and Christopher Reeves with one count of theft of property over $1,000. (ECF No. 17-1 at 5.) The indictment alleged that the men stole wire fencing from Eugene Grinder in January 2008. (*Id.*)

At Petitioner's jury trial, Grinder testified that several years prior to trial he had purchased "about 5,000 feet of six-foot wire fencing in seventy-two, irregular sized rolls," for $3,000. *Sizemore*, 2011 WL 345854, at *1. "He left the wire fencing outside on [his] property" in Perry County. *Id.* In January 2008, he received a phone call informing him that a roll of his wire fencing had been found. *Id.* Upon "arriv[ing] at [his] property, [he] discovered that the majority of the wire fencing had been taken and just a few pieces were left." *Id.*

Reeves testified that "in January 2008, he and [Sizemore] stole rolls of wire fencing from a property in Perry County," which they hauled away in a truck. *Id.* On a separate occasion, they returned to the property in "a red Chevy pick-up truck they [had] borrowed from Herbert Dell Potter." *Id.* They took the second load of fencing to the house were Potter was staying. The "fencing was sold to Heather Georges" and through "Trade Time, a local radio show." *Id.*

Potter and his wife testified that in January 2008, they were living at the home of Kelly Pilatti, an acquaintance of Sizemore. *Id.* (*See also* ECF No. 17-2 at 94-95.) They lent Sizemore their black truck, and when he returned it to them it "was filled with twenty-five to thirty rolls of" "rusty" fencing measuring "about six feet high." *Sizemore*, 2011 WL 345854, at *1. Petitioner told the couple that the "fencing was left over from a job erecting a fence." *Id.*

Tommy Franzen, a sergeant with the Lewis County Sheriff's Department, testified that he "was informed that wire fencing had been stolen from Mr. Grinder's property." *Id.* During his investigation, he "discovered twenty-one rolls of wire fencing" at Pilatti's residence. *Id.* When

Sizemore and Reeves were "brought into the sheriff's department for another reason," Franzen spoke with them "about the wire fencing." *Id.* Sizemore "told Sergeant Franzen he bought the wire fencing at a store for $85 a roll." *Id.* The case was subsequently referred to the Perry County Sheriff's Department. *Id.* at *2.

Heather Georges, "a close friend" of Sizemore, testified "that she purchased a few rolls of wire fencing from [him] in late December 2007 or early January 2008." *Id.* Joey Holt testified that he "heard an advertisement for wire fencing on the Trade Time radio program," and bought some of it "for $25 a roll in January 2008." *Id.*

The jury found Sizemore guilty of theft of property over $1,000, and he was sentenced to twelve years of incarceration as a career offender. (ECF No. 17-1 at 45.) He took an unsuccessful direct appeal, *Sizemore*, 2011 WL 345854, at *4, and the Tennessee Supreme Court denied permission to appeal (ECF No. 17-11).

Petitioner subsequently filed a *pro se* post-conviction petition in the state court (ECF No. 7-12 at 3-18), which was twice amended by appointed counsel (*id.* at 35-42, 49-51). Following an evidentiary hearing, the post-conviction trial court denied relief from the bench. (ECF No. 17-13 at 55-62.) The TCCA affirmed, *Sizemore*, 2014 WL 4109754, at *7, and the Tennessee Supreme Court denied permission to appeal (ECF No. 17-24).

## II. Federal Habeas Petition

On December 22, 2015, Sizemore filed his federal habeas Petition, asserting the following claims:

> Claim 1: Trial counsel rendered ineffective assistance by "fail[ing] to properly cross-examine the alleged victim and co-defendant." (ECF No. 1 at 5.)

Claim 2: Trial counsel rendered ineffective assistance by "fail[ing] to investigate the actual value of the wire fencing" and "fail[ing] to challenge the alleged value of the wire fencing." (*Id.* at 11.)

Claim 3: Trial counsel rendered ineffective assistance by "fail[ing] to convey any plea offer to Mr. Sizemore before trial." (*Id.* at 15.)

Claim 4: Petitioner's enhanced sentence is improper.

> Claim 4A: The trial court did not use the "correct[] . . . methodology [in] . . . imposing [the] sentence after the State filed" an ambiguous notice of intent to seek an enhanced punishment on the eve of trial. (*Id.* at 19.)
>
> Claim 4B: Trial counsel rendered ineffective assistance by "fail[ing] to object to the" untimely and ambiguous notice, "resulting in the imposition of a sentence not otherwise authorized by law." (*Id.*)

Claim 5: Trial counsel rendered ineffective assistance because he had an "actual conflict [that] affected [his] performance." (*Id.* at 24.)

Claim 6: Trial counsel rendered ineffective assistance "by fail[ing] to act diligent[ly] or adequately investigate [the] difference in the numerous photographs of tire tracks and the tires of the red pick-up truck . . . ." (*Id.* at 30.)

## LEGAL STANDARDS

### I. Habeas Review and Procedural Default

The statutory authority for federal courts to issue habeas corpus relief for persons in state custody is provided by § 2254, as amended by the Antiterrorisim and Effective Death Penalty Act ("AEDPA"). *See* 28 U.S.C. § 2254. Under § 2254, habeas relief is available only if the prisoner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The availability of federal habeas relief is further restricted where the petitioner's claim was "adjudicated on the merits" in the state courts. 28 U.S.C. § 2254(d). In that circumstance,

the federal court may not grant relief unless the state-court decision "'was contrary to' federal law then clearly established in the holdings of [the Supreme] Court; or that it 'involved an unreasonable application of' such law; or that it 'was based on an unreasonable determination of the facts' in light of the record before the state court." *Harrington v. Richter*, 562 U.S. 86, 100 (2011) (quoting 28 U.S.C. § 2254(d)) (citation omitted).

A state court's decision is contrary to federal law when it "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or when "the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at" an "opposite" result. *Williams v. Taylor*, 529 U.S. 362, 405 (2000). An unreasonable application of federal law occurs when the state court, having invoked the correct governing legal principle, "unreasonably applies the . . . [principle] to the facts of a prisoner's case." *Id.* at 409.

For purposes of § 2254(d)(2), a state court's "factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). The Sixth Circuit construes § 2254(d)(2) in tandem with § 2254(e)(1) to require a presumption that the state court's factual determination is correct in the absence of clear and convincing evidence to the contrary. *Ayers v. Hudson*, 623 F.3d 301, 308 (6th Cir. 2010) (citing *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)). A state court's factual findings are therefore "only unreasonable where they are rebutted by clear and convincing evidence and do not have support in the record." *Moritz v. Woods*, 692 F. App'x 249, 254 (6th Cir. 2017) (*quoting Pouncy v. Palmer*, 846 F.3d 144, 158 (6th Cir. 2017)) (internal quotation marks omitted). A state court's credibility determinations are also entitled to a presumption of correctness. *Skaggs v. Parker*, 235 F.3d 261, 266 (6th Cir. 2000).

Before a federal court will review the merits of a claim brought under § 2254, the petitioner must have "exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). To be properly exhausted, a claim must be "fairly presented" through "one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 848 (1999).

The exhaustion requirement works in tandem with the procedural-default rule, which generally bars federal habeas review of claims that were procedurally defaulted in the state courts. *Id.* at 848. A petitioner procedurally defaults his claim where he fails to properly exhaust available remedies (that is, fails to fairly present the claim through one complete round of the state's appellate review process), and he can no longer exhaust because a state procedural rule or set of rules have closed-off any "remaining state court avenue" for review of the claim on the merits. *Harris v. Booker*, 251 F. App'x 319, 322 (6th Cir. 2007). Procedural default also occurs where the state court "actually . . . relied on [a state] procedural bar as an independent basis for its disposition of the case." *Caldwell v. Mississippi*, 472 U.S. 320, 327 (1985). To cause a procedural default, the state court's ruling must "rest[] on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman v. Thompson*, 501 U.S. 722, 729 (1991) (citing *Fox Film Corp. v. Muller*, 296 U.S. 207, 210 (1935); *Klinger v. Missouri*, 80 U.S. 257, 263 (1871)).

Only when the petitioner shows "cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate[s] that failure to consider the claim[] will result in a fundamental miscarriage of justice," will he be entitled to federal court review of the merits of a claim that was procedurally defaulted. *Id.* at 750. The ineffectiveness of post-conviction counsel may be cause to excuse the default of an ineffective-assistance-of-trial-

6

counsel claim. *Trevino v. Thaler*, 569 U.S. 413, 423 (2013) (citing *Martinez v. Ryan*, 566 U.S. 1, 11, 14, 17 (2012)). A fundamental miscarriage of justice involves "a prisoner['s] assert[ion of] a claim of actual innocence based upon new reliable evidence." *Bechtol v. Prelesnik*, 568 F. App'x 441, 448 (6th Cir. 2014).

## II. Ineffective Assistance of Counsel

A claim that an attorney's ineffective assistance has deprived a criminal defendant of his Sixth Amendment right to counsel is controlled by the standards stated in *Strickland v. Washington*, 466 U.S. 668 (1984). To succeed on such a claim, a petitioner must demonstrate two elements: (1) "that counsel's performance was deficient"; and (2) "that the deficient performance prejudiced the defense." *Id.* at 687. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686.

To establish deficient performance, a petitioner "must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. A court considering a claim of ineffective assistance must apply "a strong presumption" that the attorney's representation was "within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689 (internal quotation marks and citation omitted).

To demonstrate prejudice, a petitioner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* "It is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding.'" *Harrington*, 562 U.S. at 104 (quoting *Strickland*, 466 U.S. at 693)

(citations omitted). Instead, "[c]ounsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" *Id.* (quoting *Strickland*, 466 U.S. at 687).

The deference to be accorded a state-court decision under 28 U.S.C. § 2254(d) is magnified when a federal court reviews an ineffective assistance claim: "Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.* at 105.

## DISCUSSION

In his Answer, Respondent Arvil Chapman argues that most of Petitioner's claims are procedurally defaulted, while the remainder are without merit.[1] (ECF No. 18.) Petitioner did not file a reply, although allowed to do so.

### I. Claims 1, 3, 5, and 6

Petitioner raised Claims 1, 3, 5, and 6 in his state post-conviction petition. (*See* ECF No. 17-12 at 6-8 (Claim 1), 30-40 (Claim 3), 41 (Claims 5 and 6).) He did not, however, raise them on appeal from the denial of post-conviction relief. (*See* ECF No. 17-20 at 19-33.) The claims are procedurally defaulted, as the time for raising them to the state courts has passed. *See* Tenn Code Ann. §§ 40-30-102(a), (c) (setting one-year limitations period for post-conviction relief and setting forth one-petition rule); Tenn. Code Ann. § 40-30-106(g) ("A ground for relief is waived if the petitioner . . . failed to present it for determination in any proceeding before a court of competent jurisdiction in which the ground could have been presented.")

---

[1] The Clerk is **DIRECTED** to modify the docket to reflect Arvil Chapman as Respondent. *See* Fed. R. Civ. P. 25(d).

8

Sizemore argues that the defaults are excused because they resulted from the failure of post-conviction appellate counsel to raise the claims on appeal. (ECF No. 1 at 10, 18, 29, 31.) The argument fails. The "assertion that ineffective assistance of postconviction appellate counsel [can] serve as cause" to excuse the default of an ineffective-assistance-of-trial-counsel claim "is firmly foreclosed by Supreme Court and Sixth Circuit precedent." *Young v. Westbrooks*, 702 F. App'x 255, 268 (6th Cir. 2017) (citing *Coleman*, 501 U.S. at 742-53; *West v. Carpenter*, 790 F.3d 693, 699 (6th Cir. 2015)).

Claims 1, 3, 5, and 6 are therefore **DISMISSED**.

## II. Claim 2

Petitioner asserts that his trial attorney rendered ineffective assistance by failing to investigate and "challenge the alleged value of the wire fencing." (ECF No. 1 at 11.) He points out that the "incident report" prepared by the Perry County Sheriff's Department "indicat[ed] that the victim had reported the value of the wire fencing" at $7 per roll for 64 rolls, "totaling *only* $488"—well below the $1,000 value alleged in the indictment. (*Id.* (emphasis in original).) He complains that counsel should have investigated the value of the "rusty" fencing and used the incident report to challenge the victim's testimony that the fencing was valued at $3,000. (*Id.*) Petitioner raised the issue on appeal from the denial of post-conviction relief, *see Sizemore*, 2014 WL 4109754, at *6, and now contends that the TCCA's rejection of the claim does not survive AEDPA review. The argument is rejected.

Applying *Strickland*'s standards, *see id.* at *5, the state appellate court determined that counsel did not perform deficiently by choosing to forego a challenge to the value of the wire fencing. *Id.* at *6. The court relied on counsel's testimony that he had "proceeded on a theory of innocence at trial" and "that the value of the wire did not affect th[at] strategy." *Id.* The court

9

also noted that counsel "requested the special jury instruction on value so that the jury could consider it." *Id.* The TCCA held that counsel's "trial strategy" was "sound," and that "his failure to rely on the incident report for valuation did not fall below an objective standard of reasonableness under the prevailing professional norms." *Id.*

The TCCA also determined that Petitioner failed to establish that he was prejudiced by his attorney's conduct. It noted that the transcripts from the criminal trial "reflect[ed]" that evidence "'of all sorts and all types'" was submitted "as to the valuation of th[e] property," and that the jury was instructed that it was to "'fix the value of [the] property'" within three dollar ranges. *Id.* at *6-7. In light of the variations of value submitted into evidence and the special jury instruction, the court concluded that "petitioner . . . failed to show that even if the value had been challenged, there is a reasonable probability that the outcome of the trial would have been different." *Id.* at *7.

The TCCA's decision passes muster under the AEDPA's standards. First, because the appellate court correctly identified *Strickland*'s standards and applied them to the facts of Petitioner's case, its ineffective-assistance determination is not "contrary to" controlling Supreme Court. *See Williams*, 529 U.S. at 406 ("[A] run-of-the-mill state-court decision applying the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case would not fit comfortably within § 2254(d)(1)'s 'contrary to' clause.").

The TCCA's decision is also not based on unreasonable factual determinations, and is not the result of an unreasonable application of *Strickland*'s standards to those facts. With regard to deficient performance, *Strickland* makes clear that an attorney's "strategic choices . . . are virtually unchallengeable" if based on a "thorough investigation of law and facts relevant to plausible options." *Strickland*, 466 U.S. at 690. The state court record supports the conclusion

that counsel made a strategic decision, after reviewing the discovery materials and speaking with his client, to forego a challenge to the value of the stolen goods and pursue the theory that Sizemore did not steal the fencing. Counsel testified that he obtained the State's discovery prior to trial. (ECF No. 17-13 at 34-35.) And although he did not specifically remember the incident report, "if it[] [was] in discovery, then [he] read it." (*Id.* at 44-45.) He explained that he pursued an innocence strategy because Petitioner "denied having any involvement in" the theft and because the evidence of guilt was weak. (*Id.* at 36-37.) Petitioner testified that he concurred in the decision to present an innocence theory. (*Id.* at 22-23.)

The state court record also supports the TCCA's determination that Petitioner was not prejudiced by counsel's conduct. Even assuming that counsel could have garnered proof that the fencing was worth less than $1,000, and assuming he had used the incident report to impeach Grinder's testimony that the fencing was valued at $3,000, the jury heard other evidence that the sixty-four rolls of fencing had a total value exceeding $1,000. Specifically, Georges testified that she bought rolls of the stolen wire from Sizemore himself for $40 per roll. (ECF No. 17-2 at 89.) Holt testified that he paid $25 per roll. (*Id.* at 136.) Those purchases equate to values of $2,560 and $1,600, respectively. It was therefore not unreasonable for the TCCA to conclude that Sizemore had not established a reasonable probability that the outcome of the proceeding would have been different had counsel done more to investigate and challenge the fencing's value.

For these reasons, Claim 2 is without merit.

## III. Claim 4

Petitioner asserts that he was improperly sentenced as a career offender (Claim 4A) because of the ineffective assistance of trial counsel (Claim 4B). Both claims are procedurally defaulted.

In Claim 4A, Sizemore alleges that the trial court erred in sentencing him as a career offender because the State's notice of intent to seek an enhanced punishment was deficient in two ways. First, the notice was ambiguous because the body of the document sought a "career offender" enhancement, while the title of the document referenced "multiple offender."[2] (ECF No. 1 at 20; ECF No. 17-14 at 2.) Second, the notice was filed the day before trial, which violated the statutory requirement that such notices be filed no later than ten days before trial. (ECF No. 1 at 19.) *See* Tenn. Code Ann. § 40-35-202(a) ("If the district attorney general believes that a defendant should be sentenced as a multiple, persistent or career offender, the district attorney general shall file a statement thereof with the court and defense counsel not less than ten (10) days before trial or acceptance of a guilty plea . . . .").

Petitioner did not raise Claim 4A on direct or post-conviction appeal, (*see* ECF No. 17-18 at 4; ECF No. 17-20 at 7), and the time for raising it to the state courts has passed. As Petitioner

---

[2] "Tennessee's criminal sentencing statutes establish three sentencing ranges—Ranges I, II, and III—and six offender classifications—especially mitigated offender, standard offender, multiple offender, persistent offender, career offender, and repeat violent offender. Tenn. Code Ann. §§ 40-35-105 to -112 (2014 and 2017 Supp.). The number and nature of a defendant's prior convictions determine offender classification, and offender classification determines the applicable sentencing range. Tenn. Code Ann. §§ 40-35-106(a)-(b), -107(a)-(b), -108(a)-(b), -109(a)(1), - 120(a)-(f)." *State v. Patterson*, 538 S.W.3d 431, 436–37 (Tenn. 2017).

has not asserted cause to excuse the procedural default, or that he has new reliable evidence of his actual innocence, Claim 4A is **DISMISSED**.[3]

In Claim 4B, Sizemore asserts that "the relevant error" committed by counsel was his "fail[ure] to object to [the late and ambiguous] filing, resulting in the imposition of a sentence not otherwise authorized by law." (ECF No. 1 at 19.) He insists that, had his "attorney called attention to the obvious defect in the State's untimely filing[,] . . . the trial court would not have been able to impose an enhanced punishment [and] would have had no recourse [but] to sentence [him] to a lesser sentence." (*Id.* at 21.) Petitioner raised the claim in his post-conviction petition (ECF No. 17-12 at 15), but did not raise it on appeal from the denial of post-conviction relief. His only appellate argument regarding the State's notice was that counsel was ineffective in failing to seek a continuance due to the notice's ambiguity and late filing. (ECF No. 17-20 at 27-31.) He argued that counsel never explained to him that he could be subject to a sentence exceeding five years based on his nine prior convictions, and that had counsel discovered the ambiguity and sought a continuance, Petitioner would have learned that his sentence could be enhanced. (*Id.* at 30.) He insisted that, had he known of the risk of receiving a twelve-year sentence as a career offender, he "would have given serious consideration to taking a plea to either four or five years." (*Id.* at 31.)

To meet the AEDPA's exhaustion requirement, and thereby avoid a procedural default, a § 2254 "petitioner must present to the federal court 'the same claim under the same theory' that

---

[3] The claim is also not cognizable in this federal habeas proceeding because it alleges only a violation of state law. *See* 28 U.S.C. § 2254(a) (A "court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."); *Pulley v. Harris*, 465 U.S. 37, 41 (1984) ("A federal court may not issue the writ on the basis of a perceived error of state law.").

he presented to the state courts." *Clark v. Steward*, 2015 WL 5706981, at *19 (W.D. Tenn. Sept. 28, 2015 (*quoting Wagner v. Smith*, 581 F.3d 410, 418 (6th Cir. 2009)). Because Claim 4B presents a different theory of attorney ineffectiveness than was raised on post-conviction appeal, the claim is procedurally defaulted. As Petitioner does not assert cause to excuse the default, or that he has new reliable evidence of his actual innocence, the claim is **DISMISSED**.

In his Answer, Respondent argues that even if Petitioner meant to assert in his Petition the same claim he raised in his post-conviction appeal, he would still not be entitled to relief. The Court agrees.

In assessing Petitioner's argument that counsel rendered ineffective assistance by failing to seek a continuance, the TCCA identified the "underlying issue" as "whether trial counsel was ineffective for failing to properly advise petitioner of his sentencing exposure."[4] *Sizemore*, 2014 WL 4109754, at *7 n.2. The TCCA reviewed the post-conviction evidence and deferred to the lower court's credibility determinations:

> [T]he post-conviction court concluded that petitioner was "no stranger to the court proceedings, and it would again defy the Court's logic to some degree to believe that the defendant was caught by surprise that his previous felony convictions could actually be used against him." The court also determined that trial counsel had advised petitioner of his sentencing exposure because it would defy logic that trial counsel would file numerous motions to limit the use of petitioner's prior convictions at trial yet not inform petitioner of his sentencing exposure due to those same convictions. Furthermore, although he did not specifically remember discussing petitioner's criminal history with petitioner, he said his normal practice was to review each conviction in the criminal history with his client and then explain the possible range of punishment using a chart. Trial counsel also testified that he did not know if he actually used the words career offender but that he informed petitioner that "if found guilty, he would be doing a lot more than five years."

---

[4] The TCCA found that appellate counsel had "reframed" the attorney ineffective assistance argument on appeal to challenge counsel's failure to seek a continuance. The court held, however, that it would not deem the argument waived because the "underlying issue" was the same in the post-conviction trial court as on appeal. *Sizemore*, 2014 WL 4109754, at *7 n.2.

*Id.* at *7.

The TCCA thus found that "trial counsel had previously explained petitioner's sentencing exposure." *Id.* at *7. It therefore concluded that Petitioner failed "to establish that his attorney's conduct fell below an objective standard of reasonableness under prevailing professional norms." *Id.* (internal quotation marks omitted). The court did not reach *Strickland*'s prejudice prong.

The decision is not contrary to controlling Supreme Court law. The TCCA identified the standard for deficient performance, as articulated in *Strickland*, and applied it to the facts of the case. *See Williams*, 529 U.S. at 406; *see also Strickland*, 466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one.").

The TCCA's ruling is also not based on an unreasonable factual determination that counsel advised Sizemore about his sentencing exposure before trial. At the post-conviction hearing, Petitioner testified that his attorney never told him that his prior convictions could be used to enhance his sentence, and that he did not know that fact prior to trial. (ECF No. 17-13 at 9-10, 24.) Counsel testified that he had no specific memory of reviewing Petitioner's sentencing exposure with him, but it was his practice to go over the "chart . . . .[i]n the back of the book" and explain exposures under the "standard, multiple, persistent, and career offender" designations. (*Id.* at 35.) He further testified that on "the morning of trial, [he and Petitioner] stood outside . . . on the corner in front of the courthouse . . . talking about" the State's plea offer of five years and the fact that "if found guilty, he would be doing a lot more than five years." (*Id.* at 39.) The post-conviction court found Petitioner to be less than credible, credited counsel's

15

testimony, and concluded that counsel had advised Petitioner of his sentencing exposure. (ECF No. 17-13 at 56-57.)

The lower court's "findings of fact and determinations regarding the credibility of witnesses," as adopted by the TCCA, "are presumed to be correct." *Skaggs*, 235 F.3d at 266. Petitioner has not identified clear and convincing evidence to rebut the presumption. The findings are therefore not unreasonable. *See e.g.*, *Willingham v. Steward*, 574 F. App'x 537, 539 (6th Cir. 2014) (holding state court's finding that counsel had advised petitioner about his sentencing exposure was reasonable, where state court credited counsel's testimony "that it was his 'habit and practice' in every case to discuss the defendant's sentencing exposure at the outset of representation," although he "did not recall the specific discussions" with petitioner ).

Given counsel's accredited advice to Petitioner about his sentencing exposure, the TCCA's conclusion that counsel did not performed deficiently was patently reasonable. *See e.g.*, *id.* (affirming denial of ineffective assistance claim where counsel advised petitioner about his sentencing exposure).

Accordingly, even if Claim 4B were not procedurally defaulted, Petitioner would not be entitled to relief.

For all these reasons, the Petition is **DENIED**.

## APPEAL ISSUES

A § 2254 petitioner may not proceed on appeal unless a district or circuit judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1). A COA may issue only if the petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2)-(3). A "substantial showing" is made when the petitioner demonstrates that "reasonable jurists could debate whether (or, for that matter, agree that) the

petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El*, 537 U.S. at 336 (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). "If the petition was denied on procedural grounds, the petitioner must show, 'at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'" *Dufresne v. Palmer*, 876 F.3d 248, 252-53 (6th Cir. 2017) (quoting *Slack*, 529 U.S. at 484).

In this case, reasonable jurists would not debate the correctness of the Court's decision to deny the Petition. Because any appeal by Petitioner does not deserve attention, the Court **DENIES** a certificate of appealability.

Pursuant to Federal Rule of Appellate Procedure 24(a), a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit. Fed. R. App. P. 24(a). However, Rule 24(a) also provides that if the district court certifies that an appeal would not be taken in good faith, the prisoner must file his motion to proceed *in forma pauperis* in the appellate court. *Id.*

In this case, for the same reasons it denies a COA, the Court **CERTIFIES**, pursuant to Rule 24(a), that any appeal in this matter would not be taken in good faith. Leave to appeal *in forma pauperis* is therefore **DENIED**.[5]

**IT IS SO ORDERED**.

s/ S. Thomas Anderson
S. THOMAS ANDERSON
CHIEF UNITED STATES DISTRICT JUDGE

Date: November 2, 2018

---

[5] If Petitioner files a notice of appeal, he must also pay the full $505.00 appellate filing fee or file a motion to proceed *in forma pauperis* and supporting affidavit in the Sixth Circuit Court of Appeals within thirty days.